Good morning, Your Honor. I am Eric Honick. I represent the plaintiff class representatives in this class action case. With the Court's permission, I'd like to reserve five minutes also for rebuttal. I'll keep track of my time. Good. Because I didn't do too well last time. Thank you. There's – the plaintiffs are appealing the denial of the certification of the class. And there's three areas where I think the court – the district court made fundamental mistakes. The first is the issue of the numerosity. Although the court found numerosity as to three of the subclasses that were proposed, three of the ten subclasses, it did not find numerosity as to the other seven. And the court made a mistake in that the court said that the – although there were a vast number of people in each of those subclasses that were proposed, the court said that the numbers were not distinguished between cash cost bonds that were submitted and surety bonds that were submitted. And where the court made a mistake was the interrogatories did not – that resulted in the information provided by the government did not request or did not specify or distinguish between bonds, which is – the types of bonds, which is true. But it specified the return of bonds. And you don't return a surety bond to someone. When you submit a cash bond and the bond is – if the case is over, the cash bond is returned, the balance of the bond is returned. And that's what the interrogatory requested. Now, how come – did you make that argument to Judge Morrow? The argument actually came up in oral argument. No, it did not come up to the Court in oral argument. Which interrogatory was that? There were interrogatories – actually, all of them specifically used the word return. But I'll call the Court's attention to Interrogatory No. 5 on page 97 of the Plaintiff's Volume I brief – excerpt of the record, I'm sorry. Interrogatory No. 9 on page 103 of Volume I, and Interrogatory No. 21 on page 122. And each one of those specifically asked for the government to identify which bonds were returned. And as the Court should know, surety bonds are not returned. They're exonerated. And there's nothing to actually physically return. And in the B classes, they're talking about return of a bond without disgorging interest. Well, surety bonds are not deposited in the government's account like cash bonds. So there's not a question of returning interest on a surety bond anyway. Also, if you look at the interrogatory responses, the government did not qualify their answer in any way and say, well, some of these bonds are surety bonds, so they shouldn't be included in this number. Do we know whether the government understood return bonds to mean cash bonds? Well, they did not object in those interrogatory responses as far as not understanding the question. I'm just saying it was ambiguous as to whether. There was no objection based on ambiguity. And, in fact, the complaint specifically talks about bonds that are deposited or the bonds that are submitted, deposited, interest is earned on them, and then the bonds returned without the interest. I don't think there was any question that we're not talking about surety bonds in this type of case as to all of these bonds. So I think the red herring that was brought up during the oral argument about surety bonds, and actually it was in a reply also read by the government, is actually totally irrelevant. And this case was never about surety bonds. And the interrogatory specifically asked for return bonds and return bonds with or without interest being included. So that whole area of numerosity, I think the Court just missed that completely. And then we go to the area of the, as far as the Court's mistakes in denying certification, the area of typicality and adequacy of the plaintiffs. The Court, for some reason, dropped the earlier legal theory that it's not, there doesn't have to be, the claims of the plaintiffs do not have to be substantially identical to the claims of the proposed, the punitive subclass members. They all only have to advance the same legal or remedial theories. And in this case, that was submitted by each of these, or actually were all three of these subclass members representing subclasses. Each were requesting either return of interest or return of expenses that were deducted It's the same legal theory throughout the case. And whether the persons had, one had an administrative claim or one had a judicial case, the fact remains that in each case, we're asking for the government to give back the money that belongs to the people who own the money. But isn't the case law to the effect, wasn't the district court judge correct that the case law to the effect that a class representative has to be a member of that class? Isn't that pretty clear under the case law? It has to be a member of the class or subclass, yes, Your Honor. But the membership in the class does not necessarily require that they have to have all the identifying circumstances of the class. The member of the class is a person in the subclasses that they represent. It's a person who had their cost bond returned, for example, and the interest wasn't returned. And they fit in that class. Whether they got their case, their case was in the administrative level or the judicial level is irrelevant. They fit into the category of each of those, and under that legal or remedial theory, that it's a person who, who, who got their bond back, for example, or got their money back and no interest was provided. But why did you make that distinction then when you created the subclasses? Because the Court appeared to have some confusion as to the broad, the breadth of the classes and asked that we make them more specific in identifying. And actually, it was part of the issues that were raised about the possible defenses. We broke it up so the Court could look at the different levels of the, of the stages of a forfeiture case, whether it was an administrative stage or a judicial stage or whether it was a pending case. Are you saying there was only one class here or more than one? There are three overall classes. Okay. So you need a class, a class representative for each of those three? Yes. There's one, one class representative that represents, one represents three subclasses, one represents three subclasses, and the third represents four subclasses. So they all represent those individual classes. They may not have substantially identical circumstances like the timing of the seizure or the, the amount of interest that could be returned or, but that's, those, those are irrelevant to the certification issue, which is do they have the same legal or remedial theories advanced? And they do in each one of those three overall classes that were split up that way. What was the basis for making the distinction between the administrative forfeiture and the judicial forfeiture then? Well, actually, that came up in the subclass, in the area after the Court originally denied certifications that break them up, you can break them into subclasses, because in the meantime, the government has raised this, several possible defenses. One was that in certain stages and levels, there is, there may be a res judicata issue. And in an administrative level, for example, one of our arguments is there's no res judicata issue in an administrative level because there's no judgment in that case. It was just a decision by the, the government. And there's no way for us to go back to that court, a court, and ask for judgment or amending, amending the judgment or correcting it away. So we broke it up to make it easier for the Court to see in these different levels and, and make the choice, for example, to exclude certain of these people, certain subclasses, if, if it were based on that. But it was, it was really based on these potential defenses that the, the government was raising there to make it a little clearer for the Court. So as I understand, she, the district court judge initially denied certification as to the three broad subclasses. Then she back and said, try to define it more clearly. Correct. And, and she specifically said in a motion, in an order relating to the motion for reconsideration, that she wants us to address the issues of the administrative slash judicial dichotomy. And that's why we split it into the subclasses, to address those issues and make it clear for the Court. Are you foreclosed from getting other class representatives? I'm sorry? Are you foreclosed from getting other class representatives who would fit, who would be within each of the other subclasses? I don't think we're foreclosed from it. I don't think it's necessary in this case. But if we had to search out and find seven or six or seven other people, I don't think we're foreclosed from that if, if there was a remand for that purpose. I don't, again, I don't think it's necessary because I think these three class members, putative class members adequately represent the, the remedial and legal theories that they're advancing in this case. And the third area that the, I think where the Court made a mistake was the issue of the 23B, Federal Civil Procedure 23B analysis, which is, can there be, and specifically, first, is there an injunctive or declaratory relief that's available versus the later issue of the, the common issues of the class, which I'll address last. But in this case, each of the subclasses are requesting injunctive or declaratory relief. And those fit into the category of 23B1A or 23B2 certification. And there's no question that these people are not looking for damages. And that's where the Court made a mistake. The Court said, well, these people who are asking to have their money returned that the government's holding are seeking a form of damages. Well, that was, that conclusion by the Court was totally inconsistent with the Court's earlier conclusion that return of interest under the, this Court's U.S. v. $277,000 case is not a form of damages, but it's discord, it's an equitable remedy of disgorgement. So if the Court is concluding first that their claimants are entitled to a form of relief of equitable disgorgement, then, which is, which is essentially injunctive or declaratory relief, that you have to return something you took from someone, then it should, the plaintiff should definitely qualify for certification under the 23B1A or 23B2 categories seeking injunctive or declaratory relief. And I don't, I don't know how the Court jumps from saying it's equitable relief here, but suddenly now they're asking for a form of damages and it didn't make sense. So I think the Court made a mistake there in, in making that conclusion that those two Rule 23 sections don't apply. And we're also asking for certification, and we think the Court made a mistake in the last area, Federal Rule 23B3 area, in that common issues do predominate and that class action would be the superior method in this case to individual actions, because the Court did not address the fact that the class definition, subclass definitions that were presented to the Court specifically excluded the areas of inquiry that the Court thought they would have to, to make individual inquiries into. As a practical matter, how would you go about, how would the district court going about determining, for example, how much interest the government needs to disgorge for each of the claims? It's a very simple process. And, and we actually, during discovery, we started to look at the individual files on each case. There's either an administrative file or a judicial file that the U.S. Marshal would have possession of, or, I'm sorry, either the DEA, for example, as an agency, or the U.S. Marshal or Customs as the custodial agency would have. And you look in that file, and first, you would, for example, the Court would not have to do this, but a special master or the parties would just look at the file and see, is there a settlement agreement in the file? And if it is, then, then those people are excluded from the class. If there's no settlement agreement, then we move on. And to answer the Court's specific question, there's, there will have dates showing the date of seizure, for example, the date of deposit of a cost bond, for example, and specifying the amount of costs that were taken out of the cost bond. It's all right in each individual file. So it's a very simple process. And the U.S. Marshal and the U.S. Customs Service does this all the time in determining what costs to return to someone or what amount of interest to pay to someone under the 277,000 case. So it's actually a very simple process. It would take approximately five minutes to look at a file, determine whether this person should be included in the class or subclass, and then if they are, then compute the amount of disgorgement of interest or expenses. And these would all pertain to pre-CAFRA cases? Yes. How far back? Well, the case was filed, I think it was early August 1998. There's a 6-year statute of limitations. So the furthest you could go back would be the beginning of August 1992. It would be a 6-year period. Well, no, actually, it would be beyond 6 years, because CAFRA came into effect in August of 2000. So it would be up until the cases that are filed up until August 2000. So it would be actually an 8-year period, because it would still be pre-CAFRA. And within the time period after 1998 that the case was filed. So there would have been some pending cases in 1998 that hadn't been decided between 1998 and 2000. And there's a whole – there's three separate subclasses that include pending cases that the plaintiffs requested. That is essentially the plaintiff's case as far as the certification issue. And frankly, I'd – if there's no further questions on that issue, I'd like to reserve my time for rebuttal on the cross-appeal issues. Thank you, Counsel. Thank you, Your Honor. Good morning, Your Honors. Good morning to you. On – let me start by addressing some of the issues that were raised by Mr. Honig. On the issue of numerosity, the argument that return necessarily means cash-cost bonds is something that I think pretty clearly has been somewhat created out of whole cloth. There was no assertion of what that meant, and there was no – before the interrogatories were responded to, there was no – in the government's view, there was really no confusion as to what return meant. The government took the words cash bond at face value and construed it to be all cash bonds. There's really no way of distinguishing in the government's information system whether certain bonds are cash bonds or certain bonds are other types of bonds that are allowed by the statute and the regulations. So the argument that obviously when it's returned, it has to mean cash-cost bonds I think really is an attempt to rationalize after the fact what went on in this case. So – But are you quarreling as a factual matter, though, since I don't have the interrogatories in front of me, are you quarreling with the characterization of the interrogatories as asking for bonds that were returned? I mean, did they actually say that? I think in at least some of the interrogatories, the word return was in there. But I think – Can a surety bond be returned? I think, yes, in a sense that if you construe the word returned in a broad sense, exonerated or whatever the appropriate term is for sureties. And to be honest with you, I think nobody was really focusing on, well – The government wasn't focusing on answering or objecting properly to the interrogatories. Well, in the government's view, there really was no distinction as to certain types of bonds. It said cost bonds. So the government took cost bonds at its face value and looked at what that answer would be. There was no confusion in the government's mind as to whether or not they were really talking about cash cost bonds because it says returned. I think returned in an everyday sense can apply to, for example, sureties. But if it – The obligation being returned, I think, is – If it were clear that we're talking only about cash bonds and not surety bonds, there'd be no numerosity problem then. Well, there are other numerosity problems, Your Honor. The B and C classes, one thing that was common to all B and C classes was the cost bond versus cash cost bond issue. But for the C cost bonds, there are issues pertaining to whether or not cash is returned or not. Those interrogatories asked about were proper deductions taken or were cost bonds returned. And the government's response was we can't tell whether proper deductions were taken without looking at the files. We can't tell whether these represent cost bonds returned. But here's a universe of figures from which it could potentially be the case that these bonds were improperly deducted from or these bonds were not returned. So it's inaccurate to say that these C classes comprise that these numbers are accurately reflective of the classes that plaintiffs described. The government did the best it could with the information that it had. There was a motion to compel further responses to the interrogatories. That was denied. And that was a position that the parties were left in at the time of the certification. Also on the – That really only goes to sufficiency of the evidence for purposes of determining numerosity. If a class were certified, you would send out a notice and say, you know, self-identify. You wouldn't need to rely on the government's inadequate record-keeping. Isn't that right? Would the plaintiffs have to rely on the government's record-keeping? No, no, I'm saying all of this inability to make these, you know, separate identifications, just it – we have that inability because right now we're just determining whether or not a class should be certified, and that's one of the elements, numerosity. But I'm saying if a class were certified, you would send out a notice to all people who had posted cash bonds and then ask them to identify themselves. So you wouldn't have this record-keeping problem. Well, that record-keeping problem would persist throughout that process because I suppose that it's possible for a broad notice to be sent out to everybody in the United States of America or everybody who posted a cost bond and then ask them to identify themselves. There's a six-year period of forfeiture actions, right? And there's people who posted bonds and either there were improper deductions or interest expenses. Yes. So for that six years, the government could identify the people who had posted bonds and forfeiture proceedings, and you could ask them the question, you know, was it a cash bond, you know, or whatever you needed to ask. I suppose. But I think if someone said I posted a cash bond, I think in order to verify that, it would require the additional step of looking at the individual files. Oh, there are five then, right? You don't have to worry about your CCATs and CATs and all of that. I believe that's correct, Your Honor. The other numerosity problem as to the A classes that Judge Moore identified, and I think it's important to note that in this case we're not talking about a district judge who didn't carefully review what happened in the district court. It carefully reviewed for a long period of time, for four years, and several motions. There was a certification motion that was made. I don't think anyone would question how careful Judge Morrow is or was. There's no question about that. She did a very careful, thorough job. The question is whether she was right. Yes. And I think it's important to bear in mind who we're dealing with. And really the depth of analysis in each of the three orders, the initial motion for certification, the motion for reconsideration of the certification, and then the motion for certification. So we have basically an opposing counsel made three arguments. One was numerosity. The second was the class representative. And the third is 23B. Yes. Let me address the class representative argument. I think it's a little bit unusual for plaintiffs to say, yes, well, we have three classes for some purposes if we can squeeze in under these requirements, but we actually have ten classes for other purposes if we can meet those requirements. What Rule 23 says is that if you designate subclasses, each of the subclasses have to meet all of the requirements. You can't have certain subclasses for certain requirements and different subclasses for different requirements. The fundamental problem that the plaintiffs had with representatives and typicality requirement is that they had no representative, no representative plaintiff for seven of the classes. And as Judge Wardlaw pointed out, plaintiffs defined these classes themselves. And in the classes that, subclasses that they themselves defined, these people were not members. They were not members of these various subclasses. And if the Court revisits them. Kennedy. But Julie Suwaka was a member of subclass A2, right? The Court determined, the district court determined that that would be the appropriate subclass for her. Yes, Your Honor. If the Court looks at page 45 of the government's opening brief, there are a myriad of Supreme Court and Ninth Circuit cases beginning with Sosna which say that a litigant must be a member of the class which he or she seeks to represent. And by virtue of the application of Rule 23, if you define subclasses, a litigant must be a member of that subclass. And then there are other Supreme Court cases like Bailey and Ninth Circuit cases like Hawkins that really look at this issue in terms of standing. If there's no representative, there's no standing. But Nancy Schauer, who was in class B, and Delita Brown in class C, were they not a member of some subclass at least? Yes. Nancy Schauer was understood by the district court to be a member of the B2 class excuse me, B3 class, and then Delita Brown was understood to be by understood to be a member of the C3 class. Okay. So that only a very small percentage of the plaintiffs were not represented by a member of a subclass. I don't think that's accurate to say. Well, it looks like about 24,000 out of 25,000 out of almost 30,000 would be represented by those three. Well, I don't I'm not sure about the numbers. But of the 10 subclasses that have been defined, only three of them accordingly. I'm not talking about the subclass. I'm talking about people in classes. People in the subclasses range from 445 to 11,000. And the three that you have said are represented include one group of almost 9,000, one group of almost 12,000, and one group of 3,000. Well, those are the numbers that are in the responses to those interrogatories, but not necessarily in the government's view members of that class. Okay. All right. What about the do you have more you want to say on the class representative? Yes. Just a final point on the numerosity. The A class is I think Judge Morrow's opinion concludes that there were there was sufficient evidence of not clear how she derives that. She indicates that it's overstated, and she indicates that in any event she feels that it's numerous. But there's no rhyme or reason there as to the extent of the overstatement. So the government's view is that even the A classes are improperly indicated to have been sufficiently numerous because there's no evidence in the record as to the extent of the overstatement, which was similar to the basis for which she denied the numerosity of the B and C subclasses. As to the issue on whether or not Judge Morrow or the district court erred in concluding that B1A and B2 were improper basis for certification, the inquiry is not what they see. It looks to what is the fundamental nature of the relief they're asking for primarily. Now, we're in a situation where CAFRA has been enacted. It provides for interest. It eliminates cost bonds for pretty much all but Title XIX and some other types of actions. So the judge looked at it as fundamentally looking for monetary damages, which are not proper subjects of Rule B1A or B2 classes. And that's fairly well established in the cases that have been cited by the government in this brief. It's true, and I think Mr. Honig argued this point, that the Court said, well, in some sense they're actually looking for equitable disgorgement rather than money. And I think that follows from the $277,000 case, which in a way to get around the sovereign immunity issue said that that's actually not interest, that's equitable disgorgement. And that's the law of the circuit regarding interest. But that's not necessarily the end of the inquiry for 23B1A and B2 purposes. You have to look to primarily what's the relief they're looking for. They're looking for money damages. They're looking for money. Some cutting of a check can satisfy the entire relief they're seeking for. So under the analysis under B1A and B2, those types of cases are improper for class certification. Under the B3 analysis, there are a host of defenses that the Court looked at in determining whether or not the class issues would predominate or whether individual issues would predominate. The fundamental problem that the government has with the plaintiff's argument there is that I think it really tremendously oversimplifies the nature of the dispute to say it's a simple formula, you just look at the file, it's a five-minute review, and you can determine whether or not someone's a member of the class or not. It's like saying, well, I excluded settled cases, but that's tantamount to saying all appropriate members shall be included, all inappropriate members should be excluded. Well, really that begs the question of what's appropriate and what's inappropriate. To look at what settled cases mean, for example, in the judicial context where a case might be settled without a complaint ever being filed, there necessarily isn't going to be a settlement agreement that you can go to. It really depends on each AUSA who might be handling that case. If the result is that there's a resolution and there's going to be no court filing, what's the trouble, what's the need for the trouble to write a settlement agreement? I think a lot of cases will have that settlement agreement, but my point is that that's also an individual inquiry. There may or may not be a settlement agreement, and looking at the files isn't necessarily going to give you an answer right away as to whether this person should or shouldn't be in the class. As far as race judicata, again, the Court saw that as a very detailed, individualized inquiry. Here, you had a situation where these plaintiffs had situations where the Court felt that it didn't work. Let me ask about the A2, which is the group that she had still in the running until she said B3 didn't apply. As to A2, wasn't race judicata, weren't they already out of the class, the people who had race judicata? I'm sorry. I'm not sure I understood your last question. Were there people who, where there was a race judicata claim, defense, were those people not already excluded from A2? I don't think there's anything in the record indicating that the way that the plaintiffs had defined subclass A2 excludes race judicata. I'm not saying that there isn't, but that would be tantamount to saying, well, all the federal cases are excluded. Really, the problem goes back to how do you determine whether or not something is race judicata. And the Court found that to be a very individualized inquiry, which precluded the predominance of issues finding that the Court needed to make. But isn't that somewhat inconsistent with the Court's ruling on the race judicata argument the government made with respect to the Shower and Brown claims? I suppose there is some level of inconsistency, but not of any significance. The Court found, after detailed looking at the facts, that there was an insufficient basis to say that Plaintiff Suoka, Plaintiff Shower, Plaintiff Brown's claims were barred by race judicata. But that still left open the inquiry of under B3, will these issues be such that they override the predominant issues? And that's the inquiry that the Court properly said, look, I made these determinations based on a lot of factual inquiry. For me to make that determination again as to all plaintiffs is really going to be an individualized inquiry. So even though she ruled that these particular plaintiffs were not barred by race judicata, the fact that she found that it was a very highly factually intensive inquiry is perfectly consistent with her decision, because that's actually what happened. She ruled after a very highly factualized inquiry that these plaintiffs were not barred. She could decide for other plaintiffs after a highly factualized inquiry that these plaintiffs were barred by race judicata. Also, there are other defenses like the hold harmless agreement. There's a lot of evidence in the record that there's a myriad of hold harmless agreements that are being used by the various agencies. And that, again, is a highly individualized inquiry. And that depends on the inequities of the parties. What were the bargaining positions of the parties? Those facts may not be readily discernible even from the files, if you were to look at the files. Were these parties representative? What circumstances were these parties asked to sign a hold harmless agreement? Was it at a stage where they weren't being represented? There's a lot of factual inquiry that would need to be made to determine whether or not the hold harmless defense would be a valid defense. And that, again, is also something that goes to the cuts against the predominance finding that the district court made. Same thing with the petitions for remission and mitigation. Those are administrative decisions that are tantamount to settlements in a lot of cases. And the court has to make a determination as to whether or not the granting of a petition for remission and mitigation is, in fact, a settlement whereby the claimant waives any other claims that it might have, he or she might have for interest or cost bond deduction. So there, again, there are a myriad of individualized issues that the court honed in on in finding that predominance did not prevail in this case. I would also go back to the – I think it's important to focus on the standard of review in this case, and it's an abuse of discretion standard. We – I mentioned it a little while ago about the history of the three motions that ultimately led to where we are today. The standard of review of the Las Vegas Sands case and the Clark case in the Ninth Circuit is really abuse of discretion. And the statement in there, in both cases, quoting from the Clark case, 513 F. Second at 1000, if the trial judge has made findings as to the provisions of Rule 23 and their application to the case, his determination of Clark's standards should not be considered an abuse of discretion. In this case, the district court made an in-depth inquiry as to each of the Rule 23a factors and each of the 23b factors, and repeatedly told the plaintiffs what was needed. After three orders, it wasn't met, and it can't be considered an abuse of discretion for her to have denied class certification. I'd like to reserve whatever balanced time – well, I'm sorry. I'd like to move very quickly on to the government's cross-appeal issues. I'm not going to belabor all the issues that have been raised by the government's appeal. I would like to hone in on a couple of issues I think are relevant. First of all, on the summary judgment issue – excuse me – the race judicata issue as to Plaintiff Brown, I looked last night at what's in the record, and I think it's helpful to look at Brown's judgment, the judgment that was entered in Brown's case. That's found at the Supplemental Excerpts of Record, Volume 2, page 390. That says – that's a judgment that was entered in Brown's case that was authored by Mr. Honig, and that says, after appropriate deductions, or words to that effect, the cost bonds shall be returned. So the issue of whether or not there would be appropriate deductions was flagged in the judgment that was entered by the court. Even after the judgment, there was correspondence that Mr. Honig wrote to the U.S. Attorney's Office, to the Marshal Service. That raised the propriety of the amount of the cost bonds, and for some reason, it wasn't pursued in that case. And it's not an appropriate remedy to just abandon it there and then bring an entirely new action for those claims. One point – Was that a partial summary judgment or in favor of Brown? No. In the Brown case, that was a complete judgment. And so you say now that somebody's going to have to go forward and determine what were the proper charges, or is there a date that occurs and it doesn't matter whether the charges were appropriate or inappropriate after a certain date? Well, the issue can be litigated before a judgment was entered, and obviously, that was an issue that was on the minds of the plaintiffs before a judgment was entered, because they obviously drafted a judgment that said appropriate deductions and then didn't pursue what appropriate deductions would be. It could still be litigated after that judgment is entered under Rule 60B. They have a full year in which to correct or modify or amend the judgment to more clearly indicate whether or not the deductions they got are appropriate and whether or not some specific additional deduction should be returned. So I think you're arguing a summary judgment wasn't appropriate without determining what those appropriate deductions are. Is that what you're saying? No. All I'm saying is that it's raised judicata in this case as to Brown, because those claims could have been litigated in her underlying forfeiture case. That's the context in which I'm raising this. The other – the final point that I wanted to raise is that on the summary judgment issue as to Schauer, who's the cost bond interest claimant, there's absolutely no authority for awarding Schauer interest on cost bonds. The only arguable authority is a $277,000 case. That case, I won't belabor the Court with this point, talks about seizing property wrongfully. Once that case is extended beyond that, I think the Court is really getting into the quagmire of whether it's violating the no-interest rule, and there's no authority for Brown to argue that she's entitled to interest on a cost bond that's posted for – for ensuring that cost would be available to – after a forfeiture case. Unless the Court has any questions, I'd be happy to submit. Thank you very much, Counsel. Thank you, Your Honor. Your Honor, just a few points. The Government talked about all these possible myriad of potential – you know, potential inquiry by the Court as to individual cases. If the Court looks at the Government's brief, specifically, the subclass definitions very – in very much detail specifically exclude a lot of these potential problems and potential defenses. And I just direct the Court to the brief. Could you just tell me, the A2 class, which the district judge found made it all the way to the end and excluded them under B, and B3, she relied on certain defenses. What's your comment on the district court's reasons for finding that those defenses in B3 precluded relief, class relief here? B3 was the class where Nancy Schauer – No, the class is A2. I'm sorry. The rule is B3. The rule is B3. I'm sorry. The A2 class was Julie Suoka, who was requesting interest to be returned on her money that never got to the stage of a judicial case. It was still on the administrative level. And, frankly, there is – there are no defenses that the Government would have at that point because the subclass definition is specifically – specifically identifies a class as someone who had all of their money returned by the Government, either the Government declined the case or canceled the proceedings or determined that they had to give all the money back for some reason, and returned all the money but failed to return the interest with that money. Now, we're not talking about a settlement where part of the money was returned in exchange for, you know, Government getting to keep the rest. We're talking about all of the money being returned. So the question of a hold harmless agreement that was signed or not signed – actually, there may be cases where there was no hold harmless agreement that was signed. The Government didn't identify how many of those existed, but they're included in that. And those people would definitely go – and there's no question about it – they qualify all the way through. But where a hold harmless agreement was signed, we presented evidence before the Court and the Court – and asked the Court to determine that in the situation where all the money is returned, a hold harmless agreement after the fact is superfluous. There's – it's essentially an adhesion contract because the Government has already decided I'm giving you back your money. But we got your money and we're not going to give it back to you unless you sign this release. And the claimant, you know, he's told that – she's told that she's going to get her money back, but now the Government says, but we're not going to give it back to you unless you release us. And, frankly, we asked the Court to rule on that and just say, you know, in those cases, the hold harmless agreement doesn't apply. In short, your argument – position is that the hold harmless issue is not one that's decided on a case-by-case basis. Correct. But it's an overall question of law. Correct. And that's what we requested the Court to determine. She didn't determine it one way or the other. But our position, it was presented to the Court, and should – I think this Court can determine that. And those – based on the facts that were presented before the Court, determined that they are superfluous and those people all do apply. The other point that Mr. Lee said, he said, you remember the standard here is abuse of discretion. Well, the district court does not have the discretion to not apply specific facts that are in front of her, and that's what she did on the numerosity question. She also does not have the discretion to disregard legal issues like, for example, are these damages versus are these disgorgement of equitable type of remedy. And so abuse of discretion doesn't apply if the Court misapplies the facts or misapplies the law. Excuse me. Finally, as far as the government's ratio to con emotion, the – in Ms. Brown's case, and you argue specifically her case, she had a case where there was a judgment of forfeiture of a car. She had posted the cost bond for – to challenge that. The government – the judgment, which was a final judgment, said the car is forfeited, the bond has to be returned, less appropriate expenses. And that's all it really said. So the bond was not returned until four months later. Now, the case is over. Government's just holding on to a bond. The bond's returned, but it turns out the government's withholding money that they believe should be withheld. Well, at this point, there's no – there wasn't an issue that could be tried in front of the judge. In the original case, which is determining whether the car should be forfeited or not, this is a whole new issue where the government's now holding on to someone's cost bond and they're taking out money that doesn't belong to them. A whole different set of facts. And now you're in the area of how do you collect against the government against the property they're holding. It's not something that the district court was ever – was ever presented to the district court by the government and could have been presented to the district court because the court made a final judgment and said, return the money and return the bond. And that was it. So now the government doesn't do it four months later and a whole new action has to be filed. In some type of form was the government to collect on the money the government's refusing to return. It's just like any judgment. If you go to court, you get a judgment for personal injury, for damages or whatever, and someone doesn't pay it or you have a judgment to return a diamond ring to someone. If they don't return it, you have to – the first judge who makes that determination doesn't have to – is not part of the collection action. You have to have a separate collection action to make them give the ring back. So I don't believe the race judicata argument the government makes is applicable here. And the other thing was the government argued as to Ms. Shower's class as to interest to be paid on cost bonds. She said the $277,000 case does not apply to interest to be paid on cost bonds. It does apply, and it applied the basic principle of interest follows the principle. And that's what the case said. If you look at the case carefully, it specifically talks about the theory of interest following principle. It didn't matter whether the property was wrongfully seized or not. It's just that interest follows principle and cited a whole litany of cases that stood for that standard. And that's what the standard the district court applied in this case. Thank you, Your Honor. The case just argued will be submitted. The Court will stand at recess for the day. Thank you. Thank you. Thank you.
judges: Reinhardt, Thompson, Wardlaw